The defendant superintendent (colonel[3] ) of the Department of State Police (department) appeals after a Superior Court judge allowed the motion of the plaintiff, Trooper Lawrence Sullivan, for judgment on the pleadings. Concluding that "no substantial evidence" existed to support an order approved by the colonel that denied Sullivan's application for line-of-duty injury benefits (ILD), the judge decreed that "Sullivan shall be entitled to 424 hours of [ILD] time and not have it deducted as sick time." We affirm, albeit on a different ground. See Gabbidon v. King, 414 Mass. 685, 686 (1993) ("[O]n appeal, we may consider any ground apparent on the record that supports the result reached in the lower court").
Background. While Sullivan was on duty on October 14, 2014, his clipboard slid off of the passenger seat of his cruiser. From the driver's seat, he reached around the computer mounted on the console, to the passenger side floor. Immediately, he felt a sharp pain in his back. Following departmental rules, Sullivan notified his commanding officer and sought medical care from his personal physician. His doctor diagnosed "sciatica with pain down the right leg," prescribed medication for pain and inflammation, and recommended rest, to be followed by physical therapy.
Sullivan promptly submitted a claim for ILD. His commanding officer and the State police surgeon, Brian Morris, initially recommended approval of ILD and payment of Sullivan's medical expenses. After Morris's first examination of Sullivan, on October 27, 2014, Morris noted, "If he continues to have pain radiating into his right leg, an MRI [magnetic resonance imaging examination] may be needed for evaluation." After a follow-up examination on December 9, 2014, Morris reported that Sullivan had "injured his lower back while reaching for a clipboard on the floor of the passenger side of his cruiser" and was "making good progress." Morris recommended "that [Sullivan] be approved for up to [six] more weeks of physical therapy."
Meanwhile, on November 17, 2014, Sullivan underwent an MRI of his lumbar spine. At some point, presumably after the follow-up examination, Morris received Sullivan's MRI results. On January 13, 2015, just three days before Sullivan returned to work on full-duty status, the department's board on claims (board) convened to review Sullivan's ILD request. The board disapproved Sullivan's claim based on Morris's review of Sullivan's MRI results. Reversing his earlier recommendations, Morris now concluded that Sullivan's pain was not the result of a work-related back injury, but rather the result of Sullivan's preexisting back conditions, which included degenerative disc disease, degenerative joint disease, and a cyst.[4] The board determined that the department was not responsible for Sullivan's medical expenses and that the 424 hours of ILD he had used while recuperating would be reclassified as sick leave.
Sullivan appealed the board's decision to the colonel under G. L. c. 22C, § 43, which provides any person aggrieved by an order of the department, or of a division or officer thereof, with a right of appeal to the colonel. Major James A. Jones, II, conducted the § 43 hearing as the colonel's designee. Sullivan, represented by counsel, testified and offered letters from his personal physician and his chiropractor to the effect that while Sullivan's act of bending and twisting in an awkward manner was not the original cause of his degenerative back conditions, it did exacerbate his preexisting injury, cause "presenting symptom[s]" of severe pain and swelling, and possibly cause new injury or further damage to the preexisting injury. Jones recommended sustaining the board's decision; the colonel accepted the recommendation and denied Sullivan's § 43 appeal.
Sullivan next filed a complaint seeking judicial review of the colonel's decision in the Superior Court, as provided by § 43. Acting on cross motions for judgment on the pleadings, the judge ordered judgment for Sullivan. Rejecting the department's determination that Sullivan's injury merely caused him to suffer "symptoms" of a preexisting injury, the judge concluded that "sciatica is not a symptom; ... it is an injury and it is compensable."[5]
Discussion. Sullivan obtained judicial review of the colonel's decision under § 43, which provides in pertinent part, "Any person aggrieved by an order approved by the colonel may appeal to the superior court .... The superior court shall have jurisdiction in equity upon such appeal to annul such order if found to exceed the authority of the department." G. L. c. 22C, § 43, inserted by St. 1991, c. 412, § 22. The department contends that this language permits a Superior Court judge to disturb such an order "only if the Colonel's decision was arbitrary or capricious or otherwise unlawful," and that the judge erred by applying the substantial evidence standard of G. L. c. 30A, § 14. We need not address whether the c. 30A standard applies, however, because we conclude that the board's decision, approved by the colonel, was arbitrary and capricious.
Under the deferential standard of § 43, "[t]he decision of the board can be disturbed only if it is based on 'a legally untenable ground' ... or is 'unreasonable, whimsical, capricious, or arbitrary.' " Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 218 (1989), quoting from Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277 (1969). We have described an arbitrary and capricious decision as "lack[ing] any rational explanation that reasonable persons might support." Hercules Chem. Co. v. Department of Envtl. Protection, 76 Mass. App. Ct. 639, 643 (2010), quoting from Cambridge v. Civil Serv. Commn., 43 Mass. App. Ct. 300, 303 (1997). But even a reasoned decision can be arbitrary and capricious. When an agency acts on reasons that "are related ... to an ad hoc agenda, then that agency has acted arbitrarily because the basis for action is not uniform, and, it follows, is not predictable." Fafard v. Conservation Commn. of Reading, 41 Mass. App. Ct. 565, 568 (1996). "An agency should strive to act on bases that are uniform and predictable," and when it does not, it "courts scrutiny under the arbitrary and capricious standard." Hercules Chem. Co., supra.
In its brief, the department defends its decision to reject Sullivan's claim on the ground that it has a "policy" that "symptoms of a preexisting condition-if that condition was not caused by a physical injury sustained [while] actually performing police service-cannot support a claim for [ILD] benefits." As evidence of its policy, the department points to art. 8 of its rules and regulations, which establishes the board to "hear cases of claims relating to injuries incurred ... while actually performing police services." See G. L. c. 22C, § 16, inserted by St. 1991, c. 412, § 22 (authorizing colonel to allocate department's appropriated funds to pay "the reasonable hospital, medical and surgical expenses incurred by any trainee or officer of the department when temporarily or permanently disabled by reason of injuries sustained while in the course of his employment").
This language, limiting ILD benefits to injuries "incurred" or "sustained" in the line of duty, could be interpreted at the board's whim either to allow or to disallow claims such as Sullivan's, where an employee is injured on the job, but the injury causes the employee to suffer new disability from or require medical attention for a preexisting, but dormant condition. Such injuries are compensable under the workers' compensation statute, provided that the occupational injury is a major cause of the current disability. See Castillo v. Cavicchio Greenhouses, Inc., 66 Mass. App. Ct. 218, 220-221 (2006) (to qualify for workers' compensation benefits under G. L. c. 152, § 1 [7A], employee's industrial injury must be "a major cause," not just "a but-for" cause of disability from preexisting injury); Goodwin's Case, 82 Mass. App. Ct. 642, 647 (2012) (to be compensable, industrial injury must be "a" major cause, but need not be "the" major cause of disability from preexisting condition).
We need not decide whether the colonel possesses the authority to establish a policy limiting ILD to physical disabilities caused exclusively by an injury sustained in the line of duty. The department apparently has a policy, explicitly stated in art. 8, limiting ILD to "physical injuries," thus excluding coverage for mental or emotional disabilities caused by on-duty trauma.[6] But whereas the language of art. 8 and a number of unpublished court decisions included in the record demonstrate that the exclusion of mental or emotional disabilities is the department's settled policy, nothing in the record supports the department's assertion that it has a settled policy with respect to physical disabilities like Sullivan's.
As already noted, the language of art. 8 in this regard is ambiguous. Ambiguity also exists in the department's General Order ADM-11B, entitled "Injury Reporting and Leave," which sets forth procedures for requests, review, and approval of ILD. Under these regulations, "members who have a recurrence of a previous injury," also referred to as "recurrent injuries," are initially placed on sick leave, but they may, in unspecified circumstances, be "officially approved and placed on ILD status." These procedures appear to give the board unfettered discretion with respect to the treatment of recurring injuries, inviting scrutiny for arbitrary and capricious review. See Firearms Records Bureau v. Simkin, 466 Mass. 168, 182 (2013) (absent regulations governing subject matter, individual determinations "become more susceptible to attack on the ground that they are arbitrary and capricious").
Because the department's resolution of Sullivan's claim appears to be the result of ad hoc reasoning, its action was arbitrary and capricious. Accordingly, the judge did not err in allowing Sullivan's motion for judgment on the pleadings.
Judgment affirmed.

The colonel is the executive and administrative head of the Department of State Police. See G. L. c. 22C, §§ 1, 3.

Morris's complete findings were as follows: "Lawrence Sullivan is the 53-year-old trooper who alleges a back injury while reaching across his cruiser console to retrieve paperwork on the passenger side floor. ... At the L4-L5 level, he has degenerative disc disease, degenerative joint disease, and a cyst. This pathology is causing his low back pain and right-sided sciatica. The degenerative changes and cyst would not be caused by bending to pick up papers; rather, these would be preexisting conditions mostly due to everyday wear and tear. For this reason, the [board] should consider denying his claim for a work-related back injury."

The judge opined that sciatica "is a medical diagnosis; it is an extremely painful condition, characterized by often unremitting pain, and further described by the patient as if an electrical cattle prod is inserted and twisted into a particular nerve ending. The [d]epartment simply misses the point, and anyone who has had such a condition well appreciates the severity and disabling nature of such excruciating pain."

Such disabilities are covered by workers' compensation. See G. L. c. 152, § 1(7A).