FRANK L. SCHEFFLER'S CASE.

Suffolk. October 5, 1994. - December 22, 1994.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Statute*, Construction. *Workers' Compensation Act*, Prima facie evidence, Incapacity, Impartial physician, Appeal, Judicial review.

An administrative judge of the Department of Industrial Accidents correctly concluded that the independent medical examiner's report pursuant to G. L. c. 152, § 11A (2), had prima facie effect only as to medical issues and did not have such effect on the issue of the employee's earning capacity, and the judge's award of partial incapacity benefits to the employee was proper. [254-257]

A decision of the reviewing board of the Department of Industrial Accidents, based on the administrative judge's report contained no errors of law and was otherwise in accordance with the standards referenced in G. L. c. 152, § 12 (2), as amended through St. 1991, c. 398, § 32A. [257-261]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Amy Scarborough* for the insurer.

*Robert M. Schwartz* for the employee.

GREANEY, J. In this case we are called on to interpret G. L. c. 152, § 11A, as appearing in St. 1991, c. 398, § 30, which, in a workers' compensation case "involving a dispute over medical issues," requires examination of the employee by an "impartial medical examiner," who is to report on specified issues, and whose report is to "constitute prima facie evidence of the matters contained therein." The reviewing board (board) upheld the decision of an administrative judge of the Department of Industrial Accidents who concluded that the independent medical examiner's report had prima

facie effect only as to medical issues and did not have such effect on the issue of the employee's earning capacity. Wausau Insurance Company (insurer) appealed to a single justice of the Appeals Court pursuant to G. L. c. 152, § 12 (1992 ed.), who reported the case to a panel of that court. We transferred the case to this court on our own motion. We agree with the decision of the board and, consequently, we affirm its decision.

We summarize the facts found by the administrative judge and adopted by the board. Frank L. Scheffler (employee) was employed by Sentry Insurance Company (employer) from 1962 as a sales representative selling all lines of insurance and servicing both family and commercial accounts. His job required him to spend as much time on the road as he did in the office. His income was based solely on a percentage of the insurance that he sold and depended on individual initiative, motivation, and aggressiveness. In order to gain an advantage over his competition, the employee devoted much of his time to soliciting new business. This required the employee to send out letters to prospective customers throughout his sales territory, which included Suffolk, Essex, and Middlesex Counties in Massachusetts, as well as eastern New Hampshire, and to canvas these areas in his automobile. The maximum time he spent traveling was thirty to thirty-five hours each week. During the course of a typical day, the employee, after traveling, would return to the office and make between six to eighteen telephone calls and dictate or transcribe his work notes. He would then make at least two home visits with clients each night. The employee had spent twenty-eight years building up his client list, and he had no significant experience in any other job field.

On November 28, 1990, the employee fell in the employer's parking lot, injuring his lower back. He continued to work until January 3, 1991, and has not worked since that date. He took medication two to three times a day, wore a lumbar support, and exercised at home daily in order to relieve his back pain which, by April, 1991, had become chronic in nature. The insurer initially accepted liability and

commenced paying weekly benefits. The insurer, however, subsequently filed a complaint to modify or discontinue benefits. Following a conference before the administrative judge, the employee was awarded partial incapacity benefits under G. L. c. 152, § 35 (1992 ed.). The insurer appealed, and a de novo hearing was scheduled before the administrative judge.

Pursuant to the provisions of § 11A, the employee was examined by an impartial physician, Dr. Albert F. Little, an orthopedic surgeon. According to the doctor's report, the employee suffered from a degenerative condition of the lower back which had been aggravated by the fall. The report also stated that the employee was not "totally and permanently impaired," and that he could, with some adjustments be "gainfully employed" as an insurance salesman.[1] Neither party exercised the right given by § 11A to depose the doctor, challenged admission of his report, or sought to submit additional medical data. The only other evidence before the administrative judge was the employee's testimony.

---

[1] After reciting the employee's medical history and other details, and setting out the results of his examination, Dr. Little's report stated the following:

"Based on history and physical examination and . . . other documents, the diagnosis here is degenerative spondylosis of the lumbar spine with superimposed contusions/sprain as a consequence of the fall of 11/28/90.

"In the absence of the underlying degenerative changes, [the employee] might have been expected to recover very rapidly with or without treatment. I believe that his fall stirred up a quiescent process.

"Having said that, [the employee] does have subjective complaints but rather minimal objective evidence of what I would consider present impairment and these findings [are] limited to the tenderness in the left sciatic notch and the left posterior thigh.

"I believe that these symptoms can and should be treated conservatively. I do not believe that there is any place for surgery in this man and I do believe he can be gainfully employed in his usual occupation of insurance sales which does require half time in an office setting and half time on the road. This may require some adjustments as far as automobile traveling in terms of breaking up trips, putting seat accessories in his car to make it more comfortable but I do not consider him to be, by any stretch of the imagination, totally and permanently impaired as a consequence of his contusion/sprain of 11/28/90."

Finding that the employee was incapable of returning to his previous position without some limitation, the administrative judge again concluded that the employee was entitled to partial incapacity benefits under § 35. The insurer appealed from the judge's decision to the board, arguing that, under § 11A (2), the administrative judge was required to treat the impartial physician's opinion that the employee could return to his regular job on a full-time basis as prima facie evidence. The board upheld the decision of the administrative judge, concluding that, under § 11A (2), "an impartial physician's report constitutes prima facie evidence only as to issues of medical disability and related medical matters." A physician's opinion of an employee's vocational status or ability to perform a specific job, the board continued, is not entitled to any special deference.

1. We first consider the proper meaning of § 11A, which provides for the appointment of an independent medical examiner who is to submit a report on specified issues.[2] The

[2]The relevant portions of § 11A read as follows:

"(1) With the assistance of the medical consultant to the commissioner and the administrative judges, the senior judge shall periodically review and update a roster of impartial medical examiners who are certified specialists in various medical fields and who are willing to make prompt reports and be deposed as hereinafter provided. The department shall establish criteria for being named to and remaining on said roster.

"(2) When any claim or complaint involving a dispute over medical issues is the subject of an appeal of a conference order pursuant to [G. L. c. 152, § 10A], the parties shall agree upon an impartial medical examiner from the roster to examine the employee and submit such choice to the administrative judge assigned to the case within ten calendar days of filing the appeal, or said administrative judge shall appoint such examiner from the roster. . . .

"The impartial medical examiner, so agreed upon or appointed, shall examine the employee and make a report at least one week prior to the beginning of the hearing, which shall be sent to each party. No hearing shall be commenced sooner than one week after such report has been received by the parties. The report of the impartial medical examiner shall, where feasible, contain a determination of the following: (i) whether or not a disability exists, (ii) whether or not any such disability is total or partial and permanent or temporary in nature, and (iii) whether or not within a reasonable degree of medical certainty any such disability has as its major or predominant contributing cause a personal injury arising out of and in the course of the employee's employment. Such report shall also indicate

insurer contends that the last sentence of the second paragraph of § 11A (2) rendered every statement made in the impartial medical examiner's report in this case prima facie evidence. We disagree. ·

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). "[T]he statutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977).

Section 11A (2) is one component of a larger adjudicative system in which administrative judges (and appellate courts, when called on) decide whether compensation is due an employee for an injury claimed to have been sustained at work.

---

the examiner's opinion as to whether or not a medical end result has been reached and what permanent impairments or losses of function have been discovered, if any. Such impartial physician's report shall constitute prima facie evidence of the matters contained therein.

"Failure of an employee to report to an impartial medical examiner agreed upon or appointed, . . . after due notice and without cause, and failure to submit to such examiner all relevant medical records, medical reports, medical histories, and any other relevant information requested without good reason, shall constitute sufficient cause for suspension of benefits pursuant to [G. L. c. 152, § 45]. The report of the impartial medical examiner shall be admitted into evidence at the hearing. Either party shall have the right to engage the impartial medical examiner to be deposed for purposes of cross examination. Notwithstanding any general or special law to the contrary, no additional medical reports or depositions of any physicians shall be allowed by right to any party; provided, however, that the administrative judge may, on his own initiative or upon a motion by a party, authorize the submission of additional medical testimony when such judge finds that said testimony is required due to the complexity of the medical issues involved or the inadequacy of the report submitted by the impartial medical examiner. The fact that the impartial examiner has not treated the employee shall not constitute sufficient reason for finding any report of an impartial medical examiner inadequate."

The nature of adjudication under the system has been described as follows: "Compensation is not awarded for personal injury as such but for 'incapacity for work.' This concept combines two elements: physical injury or harm to the body, a medical element, and loss of earning capacity traceable to the physical injury, an economic element. Some benefits may be due for a physical injury which does not interfere with the employee's ability to earn his full wages. He would be entitled to medical and hospital care and, if left with a permanent physical handicap, to specific compensation under [G. L. c. 152, ]§ 36. But apart from such cases, an injury is not compensable unless the physical injury causes an impairment of earning capacity.

"Incapacity for work is the common statutory basis of benefits for total, permanent and total, and partial disability. The degree of incapacity determines whether the disability is total or partial. The determination of loss of earning capacity involves more than a medical evaluation of the employee's physical impairment. Physical handicaps have a different impact on earning capacity in different individuals. Education, training, age, and experience affect the ability to cope with the physical effect of injury. The nature of the job, seniority status, the attitudes of personnel managers and insurance companies, the business prospects of the employer, and the strength or weakness of the economy also influence an injured employee's ability to hold a job or obtain a new position. The goal of disability adjudication is to make a realistic appraisal of the medical effect of a physical injury on the individual claimant and award compensation for the resulting impairment of earning capacity, discounting the effect of all other factors . . ." (footnotes omitted). L. Locke, Workmen's Compensation § 321, at 375-376 (2d ed. 1981). See also 1C A. Larson, Workmen's Compensation § 57-11, at 10-16 (1994 & Supp. 1994) (discussing disability adjudication in similar manner).

Section 11A (2) expressly states that an impartial medical examiner is to be appointed only when a dispute arises "over medical issues." Section 11A (2) seeks, by means of an im-

partial physician's report, to avoid or minimize situations where "dueling doctors" present conflicting medical evidence concerning the nature and cause of the employee's injury and the degree of disability. Considering this point as the primary imperfection that the Legislature intended to correct in § 11A (2), together with the precise reference in § 11A (1), restricting the need for an impartial physician to disputes over "medical issues," and the nature of disability adjudication which involves decision of issues of both fact and law, we think the matters the impartial medical examiner is directed by § 11A (2) to report on primarily concern medical facts and related opinions concerning the nature of the employee's injury and its causation, the extent of disability, and whether any permanent impairment or losses of function exist.

With specific reference to the degree of disability, which is the issue in this case, the impartial medical examiner ordinarily would be expected to describe the employee's ability to perform certain tasks and to state restrictions on his ability to work.[3] The impartial medical examiner might also relate the medical findings to the requirements of the employee's job and express an opinion that, based on the medical findings, the employee can return to work in some capacity. If that opinion is based on facts which the administrative judge (and ultimately the board) finds are complete and accurate with respect to the requirements of the employee's job, or other work available to the employee, the administrative judge would be required to accord prima facie status to that opinion as well. After giving proper weight to the prima facie and other evidence, the administrative judge would then find the facts and apply appropriate legal standards to determine whether the employee has suffered a loss of earning capacity.

2. We next consider the correctness of the board's decision. Under G. L. c. 152, § 12 (2), as amended through St. 1991,

---

[3]For example, when a back injury is involved, the physician might report on whether the employee can lift objects over a certain weight, stand for prolonged periods, drive an automobile or operate mechanical equipment, or engage in other activities that would be required at work.

c. 398, § 32A, a decision of the board is reviewed in accordance with the standards expressed in G. L. c. 30A, § 14 (7) (a)-(d), (f), and (g) (1992 ed.).[4] In this case, we consider whether the board correctly decided that the administrative judge had properly applied § 11A (2), and whether the decision is factually warranted and not "[a]rbitrary or capricious," in the sense of having adequate evidentiary and factual support and disclosing reasoned decision making within the particular requirements governing a workers' compensation dispute. See *Robinson's Case*, 416 Mass. 454, 457-458 (1993); *Attorney Gen. v. Sheriff of Worcester County*, 382 Mass. 57, 62 (1980); *Howe v. Health Facilities Appeals Bd.*, 20 Mass. App. Ct. 531, 534 (1985).

The administrative judge admitted the doctor's entire report in evidence in accordance with the requirement of the third paragraph of § 11A (2). (Counsel for the parties posed no objection thereto.) As we have concluded in part 1 of this opinion (and as the board correctly concluded), the administrative judge was required to treat as prima facie evidence only the parts of the doctor's report that properly expressed determinations on the issues specified in § 11A (2).

"Prima facie evidence, in the absence of contradictory evidence, requires a finding that the evidence is true; the prima

---

[4] Under this standard, we are constrained to set aside or modify a decision of the board only if the decision is:

"(a) In violation of constitutional provisions; or

"(b) In excess of the statutory authority or jurisdiction of the agency; or

"(c) Based on an error of law; or

"(d) Made upon unlawful procedure; or . . .

"(f) Unwarranted by facts found by the court on the record as submitted or as amplified . . . in those instances where the court is constitutionally required to make independent findings of fact; or

"(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (1992 ed.).

Statute 1991, c. 398, § 32A, eliminated from appellate scrutiny whether a decision of the board is "[u]nsupported by substantial evidence," the factor set forth in G. L. c. 30A, § 14 (7) (e).

facie evidence may be met and overcome by evidence sufficient to warrant a contrary conclusion; even in the presence of contradictory evidence, however, the prima facie evidence is sufficient to sustain the proposition to which it is applicable. *Cook* v. *Farm Serv. Stores, Inc.*, 301 Mass. 564, 566-567, 569 (1938). *Thomes* v. *Meyer Store, Inc.*, 268 Mass. 586, 588 (1929)" (footnote omitted). *Anderson's Case*, 373 Mass. 813, 817 (1977). See *Commonwealth* v. *Pauley*, 368 Mass. 286, 290-291 (1975).

The administrative judge properly applied the prima facie evidence requirement of § 11A (2). She stated in her report that she accepted the doctor's diagnosis that the employee's fall at work had aggravated a degenerative condition of his lower back. The administrative judge adopted the doctor's conclusion that the employee was not totally and permanently disabled. She also concluded, consistent with the doctor's opinion, that the employee was capable of automobile travel, with certain restrictions and adjustments, and that he could perform work in an office setting where he could change his position as needed.

The administrative judge was not required to accord the status of prima facie evidence to the doctor's statement that the employee could be "gainfully employed in his usual occupation of insurance sales" because that opinion was based on inaccurate assumptions about the requirements of the employee's job.[5]

---

[5]The board's decision correctly described the problem with the doctor's opinion as follows.

"Whether the employee in this case suffers an incapacity, i.e., an inability to earn income as a result of his disability, is a conclusion to be reached by the judge after considering both medical and non-medical evidence. The impartial physician was of the opinion the employee could return to his usual occupation, which the doctor described as requiring 'half time in an office setting and half time on the road.' Doctor Little's description of the employee's work was, however, incomplete and inconsistent with the evidence adduced on the subject. Although the judge relied on the employee's testimony and found that he spent equal time in the office and on the road, the judge also found the employee spent up to 30-35 hours per week on the road. There is no indication the impartial medical examiner was

The administrative judge heard testimony from the employee, which she was entitled to credit, that he had previously spent thirty to thirty-five hours in his automobile every week, an unspecified amount of time in his office, and time in lengthy interviews with potential clients (presumably, in physical settings over which he had no control). This evidence indicated that the employee's typical work day was long and arduous. As has been indicated, the judge accorded prima facie status to the medical conclusions concerning the employee's condition, and the fact that his injury would not prevent him from undertaking a certain amount of automobile travel or from working up to one-half of a normal work week in an office setting. However, because the employee had described his job as imposing requirements considerably more demanding than those apparently assumed by the doctor, the administrative judge assigned little weight to the doctor's opinion that the employee could be "gainfully employed in his usual occupation of insurance sales." After evaluating the doctor's report, and considering the employee's age, education, work history, physical limitations stemming from the injury, and the demanding requirements of his job, the administrative judge was warranted in concluding that the employee could perform only part-time work or restricted full-time work and, as a consequence, that his work-related injury entitled him to receive partial incapacity benefits under § 35. "Partial [incapacity benefits] may be awarded . . . where the employee is unable to continue his usual work but can perform other labor of a less remunerative kind . . . [or] where the injury has rendered the employee less efficient in his former employment . . ." (footnotes

---

aware of the number of hours the employee worked per week. The impartial medical examiner apparently made an incorrect assumption — that the employee worked a 'normal' work week. That assumption was inconsistent with what was later placed on the record. The doctor's conclusion that the employee could return to his usual occupation was therefore not based on the record and was without an evidentiary foundation. The judge [properly] failed to accord that part of the doctor's opinion prima facie effect under § 11A (2)."

omitted). L. Locke, Workmen's Compensation, *supra* at § 342, at 397-398.

The board's decision, which is based on the administrative judge's report, contains no error of law and otherwise passes the test under G. L. c. 152, § 12 (2), previously expressed, for examining the adequacy of such a decision.[6]

The board's decision is affirmed.

*So ordered.*

---

[6]The board also considered whether the doctor's opinion should be considered as the opinion of an expert witness, concluding that it should not. We agree with that conclusion.